UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DERMOT J. MACSHANE,

                              Plaintiff,                    05 CV 6021 (SJ)(RML)

        - against -                                        <u>MEMORANDUM
                                                            AND  ORDER</u>

THE CITY OF NEW YORK; RAYMOND W.
KELLY, Police Commissioner; GEORGE GRASSO,
First Deputy Commissioner; JOHN GRAPPONE,
Acting Deputy Commissioner, Trials; MICHAEL D.
SARNER, Deputy Commissioner, Trials; RAFAEL
PINIERO, Chief, Personnel Bureau; GEORGE W.
ANDERSON, Deputy Chief, Executive Officer,
Personnel Bureau; MICHAEL P. O'NEILL, Deputy
Chief, Employee Relations Section; CHARLES
MICHAEL MARTINEZ, Deputy Chief Surgeon,
Medical Division; JACQUELINE MCCARTHY, Retired
Lieutenant, Counseling Services Unit; DANIEL
SWEENEY, Sergeant, Counseling Services Unit;
SUZANNE GIMBLET, Detective, Counseling
Services Unit; CHRISTINE JOANN CARLOZZI,
Detective, Counseling Services Unit; MICHAEL
BAHRENBURG, Police Officer, Counseling Services Unit;
SAM WILLIS, Counseling Services Unit; each being sued
individually and in their official capacities as employees
of the Police Department City of New York; MARWORTH
ALCOHOL AND CHEMICAL DEPENDENCY
CENTER a.k.a. MARWORTH and its agents; BRIDGE
BACK TO LIFE CENTER, INC. and its agents; and
THE MAXWELL INSTITUTE OF ST. VINCENT'S
WESTCHESTER and its agents,

                              Defendants.
-------------------------------------------------------------------X

A P P E A R A N C E S:

JEFFREY L. GOLDBERG, P.C.
2001 Marcus Avenue, Suite 510
Lake Success, NY 11042
By:     Eric Sanders, Esq.
Attorney for Plaintiff

NYC LAW DEPARTMENT
Office of the Corporation Counsel
100 Church Street, Room 2-300
New York, NY 10007
By:     Eric Jay Eichenholtz, Esq.
Attorney for City Defendants

HOFFMAN, POLLAND & FURMAN PLLC
220 East Street, Suite 435
New York, NY 10017
By:     Alfredo F. Mendez
Attorney for Defendant Bridge Back to Life

WHITE AND WILLIAMS, LLP
1800 One Liberty Place
Philadelphia, PA 19103-7395
By:     Edward Michael Koch, Esq.
        Mary E. Dixon, Esq.
Attorneys for Defendant Marworth


JOHNSON, Senior District Judge:

Plaintiff Dermot J. MacShane ("Plaintiff"), a police officer in the New York

City Police Department ("NYPD"), brings this action pursuant to the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), Title VII of the Civil Rights

Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§§ 1983 and 1985(3), the New York State and New York City Human Rights Laws and New York common law against the City of New York and fourteen NYPD officials (collectively "City Defendants").  The NYPD officials named in the complaint are Raymond W. Kelly, George Grasso, John Grappone, Michael D. Sarner, Rafael Piniero, George W. Anderson, Michael P. O'Neill, Charles Michael Martinez, Jacqueline McCarthy, Daniel Sweeney, Suzanne Gimblet, Christine Joann Carlozzi, Michael Bahrenburg, and Sam Willis.  Plaintiff has also brought suit against Marworth Alcohol and Chemical Dependency Center ("Marworth") and Bridge Back to Life Center ("BBTL") (collectively "Defendant Treatment Centers").[1]

Plaintiff alleges in his complaint that he has been the victim of discrimination because City Defendants regarded Plaintiff as an alcoholic. Moreover, Plaintiff claims that City Defendants knew or should have known that Plaintiff was not an alcoholic, and referred Plaintiff to an inpatient and outpatient treatment center anyway.  Plaintiff further claims that Defendant Treatment Centers knew or should have know that he was not an alcoholic, but proceeded to engage in unnecessary medical treatment, duplicative diagnostic testing, miscoding or upcoding of services, bundling and unbundling of services, and forced time in

---

[1] "City Defendants" and "Defendant Treatment Centers" are collectively referred to in this opinion as "Defendants."

3

isolation for detoxification.  Plaintiff claims that incompetence and negligence are

not the causes of his placement in and treatment at rehabilitative services.  Rather,

Plaintiff alleges that he is a pawn in Defendants' scheme to defraud insurance

carriers for their own financial benefit.  Specifically, Plaintiff alleges that the only

reason City Defendants referred Plaintiff to Defendant Treatment Centers was so

that Defendant Treatment Centers could make money and deliver financial

kickbacks to members of the NYPD's Counseling Services Unit.  Plaintiff further

alleges that Defendants' scheme resulted in the deprivation of his rights under the

First, Fourth, and Fourteenth Amendments.  Defendants now bring this Motion for

Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).[2]

## STANDARD

When considering a motion to dismiss under Federal Rule of Civil

Procedure 12(c), courts are to apply the same standard applicable to a motion under

Rule 12(b)(6).  <u>See</u> <u>Sheppard v. Beerman</u>, 18 F.3d 147, 150 (2d Cir.1994).  Under

---

[2] Defendant Marworth also moves for dismissal under Rule 12(b)(2).
Defendant Marworth concedes that, should Plaintiff's RICO claims survive, this
Court has the discretion to maintain jurisdiction over it should the Court find that it
served the ends of justice.  <u>See</u> 28 U.S.C. § 1965(b); <u>PT United Can Co. Ltd. v.
Crown Cork & Seal Co., Inc.</u>, 138 F.3d 65, 71-2 (2d Cir.1998).  Although
Defendant Marworth's motion to dismiss Plaintiff's RICO claims is granted,
Plaintiff has been granted leave to amend his complaint.  Consequently, Defendant
Marworth's personal jurisdiction claims will only be considered in the event that
Plaintiff chooses to amend his complaint and continues to fail to plead any RICO
claim.

that standard, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." <u>Id.</u> at 150. Courts should not grant dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). "At the [motion to dismiss] stage, 'the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" <u>Chance v. Armstrong</u>, 143 F.3d 698, 701 (2d Cir.1998) (quoting <u>Branham v. Meachum</u>, 77 F.3d 626, 628 (2d Cir.1996)); <u>see also</u> <u>Gant v. Wallingford Bd. of Educ.</u>, 69 F.3d 669, 673 (2d Cir.1995).

## A. RICO Claims

To establish a RICO claim, a plaintiff must show: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." <u>Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.</u>, 101 F.3d 900, 904 (2d Cir.1996) (citing <u>First Nationwide Bank v. Gelt Funding Corp.</u>, 27 F.3d 763, 767 (2d Cir.1994)). Section 1962(c), the section relevant here, makes it unlawful:

> for any person employed by or
> associated with any enterprise

> engaged in, or the activities of which
> affect, interstate or foreign commerce,
> to conduct or participate, directly or
> indirectly, in the conduct of such
> enterprise's affairs through a pattern
> of racketeering activity...

18 U.S.C. § 1962(c).  To establish a violation of 18 U.S.C. § 1962(c) then, a

plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity."  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985);

see also Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc., 187 F.3d 229, 242

(2d Cir.1999); Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir.1994).

The requirements of section 1962(c) must be established as to each individual

defendant.  See United States v. Persico, 832 F.2d 705, 714 (2d Cir.1987), cert.

denied, 486 U.S. 1022 (1988) ("The focus of section 1962(c) is on the individual

patterns of racketeering engaged in by a defendant, rather than the collective

activities of the members of the enterprise, which are proscribed by section

1962(d).").

When a plaintiff bases a RICO claim on predicate acts that include fraud,

as here, the pleading of those predicate acts must satisfy the particularity

requirement of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  See Gregoris

Motors v. Nissan Motor Corp., 630 F. Supp. 902, 912-13 (E.D.N.Y.1986).  Rule

9(b) provides that "[i]n all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Allegations of fraud must therefore specify the fraudulent statement, the time, place, speaker, and content of the alleged misrepresentations, see Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir.1986) (citations omitted), and factual circumstances giving rise to a "strong inference" that the defendant had the requisite fraudulent intent, see Ouaknine v. MacFarlane, 897 F.2d 75, 80 (2d Cir.1990) (citations omitted). Specifically, the complaint must allege "(1) specific facts; (2) sources that support the alleged specific facts; and (3) a basis from which an inference of fraud may fairly be drawn." Crystal v. Foy, 62 F. Supp. 422, 425 (S.D.N.Y.1983).

Defendants argue that Plaintiff's RICO claims must be dismissed because the predicate acts on which they are based are not pled with sufficient particularity. Moreover, City Defendants contends that Plaintiff's RICO claims must be dismissed because they do not allege with any specificity which individuals engaged in allegedly fraudulent acts.

### 1. Specificity as to Fraud

In order to establish mail fraud, plaintiff must allege that the defendant (1) participated in a scheme to defraud; (2) knowingly used the mails to further the scheme; and (3) had the specific intent to defraud. See United States v. Rodolitz,

786 F.2d 77, 80 (2d Cir.1986), cert. denied, 479 U.S. 826 (1986). As stated above, each of these elements must be made out by allegations that meet the Rule 9(b) standard for sufficient particularity. Frota v. Prudential-Bache Securities, Inc., 639 F. Supp. 1186, 1192 (S.D.N.Y.1986).

To say the least, the details in Plaintiff's complaint are sparse. Plaintiff alleges in a conclusory nature that Defendants knew or should have known that Plaintiff did not meet the criteria of chronic alcohol dependancy. Plaintiff also alleges that the fraud occurred when Defendants referred Plaintiff to rehabilitative services and unnecessary medical procedures.

The complaint fails to set forth with any particularity the "false or fraudulent pretenses, representations, or promises" that were made by Defendants, and which are required to establish a "mail fraud" predicate act. See 18 U.S.C. § 1341. The complaint does state, in general terms, that the purpose of the fraudulent scheme was to profit from the insurance proceeds for improper placement of police officers in rehabilitation centers. However, Plaintiff fails to allege specific facts that support these allegations. At no point in his complaint does Plaintiff allege facts that support his claim that Defendant had reason to know that Plaintiff was not an alcoholic.[3] Nor does Plaintiff point to any

---

[3] Plaintiff does allege that Defendant Gimblett was not certified but does not explain what relation this has to the fraud. In fact, this fact would suggest that Defendant Gimblet did not have reason to know Plaintiff was not an alcoholic

unnecessary procedures that he endured while undergoing rehabilitation. Rather, Plaintiff points to the referral of a patient to rehabilitative services and the subsequent insurance claims as evidence of fraud. However, the actions that Plaintiff points to are routine and do not give rise to the inference of fraud. See O'Malley v. New York City Transit Authority, 896 F.2d 704, 706-07 (2d Cir.1990) (finding that innocuous business communications, without more, fail to establish a mail fraud claim); Asbeka Industries v. Travelers Indemnity Co., 831 F. Supp. 74, 89 (E.D.N.Y.1993) (same). Plaintiff also alleges other facts, such as Defendant Gimblet's lapsed certification and Defendant McCarthy's subsequent employment at Long Island Recovery Center, but the Court finds that none of these facts gives rise to an inference of fraud. In short, the complaint fails to set forth the specific fraudulent acts, statements, or omissions made by Defendants.

Plaintiff contends that exceptions are made to the Rule 9(b) standard when the defendant has exclusive possession of the documents and other evidence necessarily to plead with more particularity. Plaintiff argues that this exception should be applied to his complaint because evidence of the fraud is within City Defendant's possession. However, it is not clear to the Court why Plaintiff is not privy to the facts necessary to state his claim with more specificity. Plaintiff has access to his own medical records and was present for his treatment. Moreover,

_____

because she was not competent enough to know the difference.

health care providers, such as Red Cross and GHI, are named as victims of the alleged fraud. Surely these providers would be more than willing to assist Plaintiff in identifying fraud. Therefore the lack of specificity in Plaintiff's complaint cannot be excused under this exception to Rule 9(b).

Plaintiff also attempts to correct the lack of particularity by pleading certain facts "on information and belief." However, while facts and evidence solely within a defendant's possession and knowledge may be pled "on information and belief," this does not mean that those matters may be pled lacking any detail at all. See First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir.2004); DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987) ("[T]he allegations must be accompanied by a statement of the facts upon which the belief is based.").

As a result, the complaint sets forth only general or conclusory allegations that fraudulent statements were made, and therefore fails to provide the particularity regarding the alleged fraud as required by Rule 9(b). Because of this failure, Plaintiff's RICO claims are dismissed against all Defendants. Plaintiff is granted leave to amend his complaint within 30 days of the date of this Order.

### 2. Specificity as to Defendants

Having already dismissed Plaintiff's RICO claim for failure to plead the fraud with sufficient particularity, it is not necessary to determine whether the

complaint sufficiently identifies the predicate act that each defendant engaged in. However, given that Plaintiff has been granted leave to amend his complaint, the Court also notes that Plaintiff has failed to plead with the required specificity as to each defendant.

A complaint "sounding in fraud may not rely on sweeping references to acts by all or some of the defendants because each named defendant is entitled to be apprised of the facts surrounding the alleged fraud." Center Cadillac, Inc. v. Bank Leumi Trust Co., 808 F. Supp. 213, 230 (S.D.N.Y.1992). A plaintiff must demonstrate that each defendant had a specific intent to defraud either by devising, participating in, or aiding and abetting the scheme. See Morrow v. Black, 742 F. Supp. 1199, 1205 (E.D.N.Y.1990); Connors v. Lexington Insurance Co., 666 F. Supp. 434 (E.D.N.Y.1987).

Plaintiff does not meet these requirements in his complaint. Instead, Plaintiff merely accuses handfuls of defendants of engaging in an alleged enterprise without identifying each defendants role in and relationship to the enterprise. Therefore, Plaintiff fails to meet the requirement under Rule 9(b) that allegations of fraud must connect to each individual defendant. See Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir.1986) ("Such allegations, which fail to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b)"); see also Landy

v. Mitchell Petroleum Technology Corp., 734 F.Supp. 608, 620 (S.D.N.Y.1990).

## B. RICO Conspiracy Claim

It is unlawful under 18 U.S.C. § 1962(d) to conspire to violate § 1962(a), (b), or (c). To state a RICO claim under subsection (d), plaintiff must establish that each defendant agreed personally to commit at least two predicate acts. United States v. Teitler, 802 F.2d 606, 612-13 (2d Cir.1986) (citing United States v. Ruggiero, 726 F.2d 913, 921 (2d Cir.1984), cert. denied, 469 U.S. 831(1984)). A RICO conspiracy claim does not require an allegation that the defendant actually committed the substantive offenses, but the complaint must allege that each defendant agreed to personally commit at least two predicate acts. See Teitler, 802 F.2d at 613. It is not enough to allege that the defendant simply agreed to the commission of two or more predicate acts by coconspirators. See Ruggiero, 726 F.2d at 921. General allegations that the defendants "conspired" in the scheme do not sufficiently attribute responsibility for fraud to each individual defendant. See Morin v. Trupin, 711 F. Supp. 97, 111 (S.D.N.Y.1989). In order to survive a motion to dismiss, a plaintiff's complaint must allege "facts implying an [...] agreement involving each of the defendants to commit at least two predicate acts." Hecht v. Commerce Clearing House, 897 F.2d 21, 25 (2d Cir.1990). In other words, the complaint must allege "some factual basis for a finding of a conscious agreement among the defendants." Id. at 26 n. 4.

Plaintiff's RICO conspiracy must then be dismissed for two reasons. First, the complaint fails to state a substantive RICO claim and the conspiracy claim is based on the same set of allegations. See, e.g., McLoughlin v. Altman, 92 CV 8106, 1993 WL 362407 *5 (S.D.N.Y. Sept.13, 1993) (dismissal of section 1962(c) claim mandated dismissal of conspiracy claim "because the latter claim relies on the same allegations as the Section 1962(c) claim"), aff'd, 22 F.3d 1091 (2d Cir.1994).

Second, conclusory allegations of an agreement, such as the ones found in Plaintiff's complaint, are insufficient to state a RICO conspiracy claim. The complaint alleges no facts showing that individual defendants, by their words or actions, manifested a conscious agreement to commit any predicate acts. Nor does the complaint allege facts showing knowledge by each of the defendants of the existence of the other alleged predicate acts. Accordingly, Plaintiff's RICO conspiracy claim is dismissed, and he is granted leave to amend his complaint within 30 days of this Order.

### C. Plaintiff's §1983 Claims Under the First and Fourteenth Amendments

In order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. See Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir.1993). Section 1983 permits claims

for violations of constitutional rights committed "under color of" state law, a phrase synonymous with the "state action" required by the Fourteenth Amendment. Thus, state action is an indispensable element of each of plaintiffs' claims for relief. City Defendants contend that Plaintiff's fails to allege any cognizable constitutional claims in his complaint. Defendant Treatments Centers contend that, as private entities, they cannot be held liable for any constitutional violations because it is not a state actor. We consider each of these claims in turn.

### 1. State Action

Action taken by a private entity constitutes state action only when "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Brentwood Acad. v. Tennessee Secondary School Athletic Ass'n., 531 U.S. 288 (2001) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)). Mere contracting or business referrals cannot support a claim of state action. See Brentwood, 531 U.S. at 307-8 (finding that interscholastic athletic organizer was not a state actor even though 84% of its business was with public high schools because it was a private entity which was neither controlled, created, nor predominantly funded by the state).

There is no interpretation of the allegations in Plaintiff's complaint that suggests that Defendant Treatment Centers were so intertwined with state actors

as to be characterized as the state itself. Plaintiff does not allege that any state actor funded Defendant Treatment Centers or its employees, and though Defendant Marworth specializes in treating law enforcement personnel with addiction problems, it is clear from Plaintiff's own exhibits that Defendant Marworth treats such a wide variety of patients and addictions that it cannot be considered an extension of the state. Pl. Ex. C. Rather, Plaintiff's complaint only alleges that he was referred to Defendant Treatment Centers and that Defendant Treatment Centers were compensated through insurance companies such as Red Cross and GHI. Because Defendant Treatment Centers' relationship with the state can at best be described as a contractor, they cannot be designated as state actors. Consequently, all constitutional claims against Defendant Treatment Centers must be dismissed. Plaintiff is granted leave to file an amended complaint as to the constitutional counts against Defendants Treatment Centers within 30 days of this Order.

### 2. Freedom of Religion

Plaintiff alleges a violation of the Establishment Clause of the First Amendment as applied to the states through the Fourteenth Amendment. Specifically, he alleges that he was forced into the "Twelve Steps Religious Based Alcohol Anonymous Program" and was not offered any rehabilitation programs that were not religious in nature.

The Establishment Clause "guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith." Lee v. Weisman, 505 U.S. 577, 587 (1992). Plaintiff primarily relies on Warner v. Orange County Dep't of Prob., 115 F.3d 1068 (2d Cir.1997), in which the Court concluded that the Twelve Steps of Alcoholics Anonymous are religious in nature for purposes of the Establishment Clause. Accordingly, the Court held that it was a violation of the Establishment Clause for a probation officer to require someone to attend Alcoholics Anonymous sessions.

City Defendants point to Kreuter v. Reuter, 01 CV 5229, 2002 U.S. Dist. LEXIS 23350 at *28 (E.D.N.Y. December 5, 2002), to stand for the proposition that Alcoholics Anonymous programs are not necessarily religious in nature. In Kreuter, the court noted that, in prior cases, the Twelve Steps were found to be religious in nature primarily because of "constant references to God and prayer." Kreuter, 01 CV 5229, 2002 U.S. Dist. LEXIS 23350 at *28. The court distinguished those previous cases and found that the plaintiff failed to allege that he was "forced to pray to God or to acknowledge a particular God." Id. at *29.

In this case Plaintiff fails to allege that he was forced to pray or acknowledge any god at all. Plaintiff's only alleges that the program was "religious based," but does not indicate whether there were any references to god.

Moreover, it is unclear to the Court whether this was the name of the official program or the just Plaintiff's description of the program. Even if it were the official name of the program, Plaintiff would still have to plead specific facts indicating that the program actually impinged upon his First Amendment rights. Because Plaintiff has not done so, his claim must be dismissed.

### 3. Freedom of Speech

Plaintiff further alleges that his right to free speech was infringed upon because City Defendants retaliated against him after he criticized NYPD's order that he seek substance-abuse therapy. "It is well established that a public employer cannot [...] retaliate against an employee for the exercise of his or her First Amendment free speech right." Ezekwo v. N.Y.C. Health & Hosp. Corp., 940 F.2d 775, 780 (2d Cir.1991). To successfully maintain a First Amendment free speech cause of action against City Defendants, Plaintiff must establish the following: (1) his speech is constitutionally protected; (2) he suffered an adverse employment action; and (3) his speech was a motivating factor in the adverse employment decision. See Phillips v. Bowen, 278 F.3d 103, 108 (2d Cir.2002). For purposes of this analysis, speech is deemed "constitutionally protected" if it can "be fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 147-48 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and

context of a given statement as revealed by the whole record." Id.

In the employment context, a discrimination suit will fail where the employee speaks "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." Id. at 147. "Speech that relates primarily to matters of personal interest or internal office affairs, in which the individual speaks as an employee rather than as a citizen, cannot support a First Amendment claim." Collins v. Christopher, 48 F. Supp. 2d 397, 408 (S.D.N.Y. 1999)(citing Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 143 (2d Cir. 1993)). As stated above, Plaintiff believes that his criticism of the decision to send him to a rehabilitation clinic was protected speech. However, his speech was solely related to matters of personal interest in that he was speaking as an employee rather than as a citizen. Accordingly, to the extent that Plaintiff's § 1983 action is based upon a violation of his right to Free Speech, that claim is dismissed with prejudice.

### 4. Freedom of Movement, Association and Assembly

Although Plaintiff alleges violations of his freedom of "movement," "association" and "assembly," nowhere in his complaint is there any factual basis to support such a charge. In fact, if such a claim is even made out, it is so "confused, ambiguous, vague [and] otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988)

(stating that "the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial" (citations omitted)); see also Fed.R.Civ.P. 8(a)(2) (requiring that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief").  Because the complaint does not support a violation of Plaintiff's right to movement, association and assembly, to the extent that his § 1983 claim rests upon such a violation, that claim is dismissed.

### 5. Due Process

Plaintiff also alleges a violation of his Fourteenth Amendment due process rights because he was deprived of property without due process of law.  Although City Defendants concede that Plaintiff has a property interest in his employment, they contend that there was no due process violation because Plaintiff could have challenged his termination in an Article 78 proceeding.

There is no constitutional violation, and thus no available § 1983 action, when a plaintiff has access to an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty.  See Zinermon v. Burch, 494 U.S. 113, 132 (1990); Hudson v. Palmer, 468 U.S. 517, 531 (1984). Moreover, it is well established that "an Article 78 proceeding is a perfectly adequate post-deprivation remedy" in the context of employment termination. Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877,

880 (2d Cir.1996); Interboro Inst., Inc. v. Foley, 985 F.2d 90, 93 (2d Cir.1993); McDarby v. Dinkins, 907 F.2d 1334, 1338 (2d Cir.1990); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 888 (2d Cir.1987); Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir.1984). Because Plaintiff could have challenged his employment status in an Article 78 proceeding, his due process claim fails as a matter of law. See Locurto v. Safir, 264 F.3d 154, 174-5 (2d Cir. 2001).

### 6.Privacy

Plaintiff further claims that City Defendants actions resulted in a violation of his constitutional right to privacy. However, as City Defendants correctly point out, Plaintiff, as a police officer, is not entitled to the same privacy rights as the average citizen. "The privacy expectations of any particular group is markedly diminished by such factors as the employees' voluntary pursuit of a position they know to be pervasively regulated for reasons of safety and the employees' acceptance of severe intrusions upon their privacy." Seelig v. Koehler, 76 N.Y.2d 87, 91(1990)(citing National Treasury Employees Union v. Von Raab, 489 U.S. 656, 668 (1989); Skinner v. Railway Labor Executives' Assn., 489 U.S. 602, 618 (1989).

Plaintiff voluntarily joined the NYPD, an organization that is not only highly regulated, but whose regulations are often predicated on the numerous safety concerns it faces as the primary protector of New York City. Because

police officers' work is, by definition, safety-sensitive, it is a justifiable intrusion upon a police officer's privacy to ensure that he or she is mentally and physically fit to carry out the duties and responsibilities required of a member of the service. See Biehunik v. Felicetta, 441 F.2d 228, 231 (2d Cir.1971). By joining such an organization, Plaintiff implicitly accepted greater intrusions upon his privacy. See, e.g., Poole v Stephens, 688 F. Supp. 149, 155 (D.N.J. 1988) (finding that correction officers' privacy expectation was diminished by the safety considerations of their work). To the extent that Plaintiff's § 1983 action is predicated upon an unconstitutional intrusion on his privacy, that claim is dismissed as a matter of law.

### D. § 1983 Claim Under False Imprisonment

Plaintiff alleges that he was "forced to join" Defendant Marworth's facility and that his confinement constituted a breach of his Fourth Amendment right to be free from unreasonable searches and seizures. In order to establish that a seizure has occurred, a plaintiff must show that "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Kia P. v. McIntyre, 235 F.3d 749, 762 (2d Cir.2000) (citing United States v. Mendenhall, 446 U.S. 544, 554 (1980)). However, Plaintiff never alleges any facts in his complaint that would indicate that he was unable to leave the facility or even believed that he was unable to leave the facility. In fact, Plaintiff

states in his complaint that Marworth "provides inpatient and outpatient alcohol and chemical dependency treatment programs," but never indicates whether his treatment was inpatient or outpatient.  Accordingly, Plaintiff fails to establish that he was suffered the predicate deprivation of liberty necessary to show that he was "seized."

Moreover, even assuming Plaintiff was enrolled in an inpatient program, Plaintiff fails to show that his "seizure" was unreasonable.  There is nothing unlawful about an employer requiring that an employee with an alcohol addiction enter an inpatient treatment facility as a condition of continued employment.  See, e.g., Geromanos v. Columbia University, 322 F. Supp. 2d 420, 424 (S.D.N.Y. 2004) (Columbia University employee was told she would be fired if she did not enter alcohol rehabilitation); Mayo v. Columbia University, 01 CV 2002, 2003 WL 1824628 *6 (S.D.N.Y. April 7, 2003) (Columbia University employee's employment was conditioned upon enrollment in substance abuse treatment facility); D'Amico v. City of New York, 955 F. Supp. 294, 299 (S.D.N.Y.,1997) ("[Fire Department's policy] contains a detailed description of procedures for departmental counseling and, where appropriate, treatment in outside facilities"); Campbell v. Pan American, World Airways, Inc., 668 F. Supp. 139, 140 (E.D.N.Y. 1987) (employee's termination was rescinded only after she agreed to

enter treatment program).[4]  The underlying rationale behind this, of course, is that if one does not wish to enroll in an inpatient treatment facility, he or she is free to resign his or her position.  Even if Plaintiff was told that he would be terminated if he did not enter a rehabilitation program, this does not rise to the level of false imprisonment.

Further, it is clear that "policemen, who voluntarily accept the unique states of watchman of the social order, may not reasonably expect the same freedom from governmental restraints which are designed to ensure his fitness for office."  Biehunik v. Felicetta, 441 F.2d 228, 231 (2d Cir.1971).  Therefore, Plaintiff can assert no claim for false imprisonment based on a reasonable order that he enroll in substance abuse treatment.

### E. § 1985(3) Claim

In order to prevail on a § 1985(3) claim, a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.  See Mian v. Donaldson, Lufkin & Jenrette

---

[4] The issue of false imprisonment was never raised in these cases.  The Court cites to them only because it is noteworthy that these cases treat the factual scenario as utterly unremarkable.

Securities Corp., 7 F.3d 1085, 1088 (2d Cir.1993)(citing United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)). Also, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Id.

Plaintiff has failed to show that any conspiracy existed because he fails to allege any facts that would support the conclusion that City Defendants came to any agreement. The lone allegation in Plaintiff's complaint that comes anywhere near establishing some agreement between the parties is that Defendant McCarthy is now employed by the Long Island Center for Recovery. However, the Long Island Center for Recovery is not a named party in Plaintiff's complaint, so it is unclear to this Court how this fact indicates any conspiracy between Defendant Treatment Centers and City Defendants. Nor can Plaintiff allege a conspiracy based upon City Defendants repeated referrals to Defendant Marworth because, by Plaintiff's own admission, Defendant Marworth specialized in treating law enforcement personnel with addiction problems. Pl.'s Ex. C.

Moreover, even if there was a conspiracy, Plaintiff fails to show that the conspiracy was motivated by any racial or class-based discrimination. There is nothing in the complaint to suggest that City Defendants' decision to send Plaintiff for substance abuse treatment was discriminatory. Accordingly, Plaintiff's claims that rest upon a violation of § 1985(3) are dismissed.

## F. Qualified Immunity

The individual City defendants Raymond W. Kelly, George Grasso, John Grappone, Michael D. Sarner, Rafael Piniero, George W. Anderson, Michael P. O'Neill, Charles Michael Martinez, Jacqueline McCarthy, Daniel Sweeney, Suzanne Gimblet, Christine Joann Carlozzi, Michael Bahrenburg, and Sam Willis contend that they are entitled to qualified immunity on all constitutional claims.

The doctrine of qualified immunity is a shield that protects government officials from having to participate in the lawsuit itself. See Holeman v. City of New London, 425 F.3d 184, 189 (2d Cir.2005). "Government officials performing discretionary functions are entitled to qualified immunity 'from federal constitutional claims [...] as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" Torres v. Vill. of Sleepy Hollow, 379 F. Supp. 2d 478, 482-483 (S.D.N.Y.2005) (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987)).

The threshold issue when the defense of qualified immunity is asserted is whether the official's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). This Court, having found no constitutional violation alleged in the complaint, need not continue the inquiry by reaching the question of whether the right violated was a clearly established right.

### G. Common Law Claims of Unjust Enrichment and Aiding and Abetting of Breach of Fiduciary Duty

Federal courts entertaining state-law claims are obligated to apply the state's notice-of-claim provision. See Felder v. Casey, 487 U.S. 131, 151 (1988). Plaintiff's common law state claims for unjust enrichment and aiding and abetting of breach of fiduciary duty must therefore be dismissed because Plaintiff has failed to serve a timely notice of claim upon the City of New York, a prerequisite to maintaining tort claims against the City. See Gaston v. New York City Dept. of Health Office of Chief Medical, 432 F. Supp. 2d 321(S.D.N.Y.2006); O'Diah v. City of New York, 02 CV 274, 2003 WL 182932 *1 (S.D.N.Y. Jan. 28, 2003). Section 50-e of the New York General Municipal Law provides that the notice of claim in tort claims against the City must be filed "within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50-e. If a plaintiff fails to timely file a notice of claim, his complaint will be dismissed. See Corcoran v. New York Power Auth., 202 F.3d 530, 541 (2d Cir.1999); O'Diah, 2003 WL 182932 at *2. Plaintiff, in his opposition papers, Plaintiff never contends that a notice of claim was filed. Rather, Plaintiff contends that notice of claim was not necessary because "notice of claim is not required in cases of employment discrimination." Pl.'s Mem. in Opp. The Court is left to conclude that a notice of claim was, in fact, not filed. Accordingly, Plaintiff's common law state claims are dismissed

with prejudice as to City Defendants for failure to file a timely notice of claim.

Defendant Treatment Centers have also moved to dismiss Plaintiff's common law state claims.[5]  Specifically, they argue that Plaintiff's claims for breach of fiduciary duty and unjust enrichment must be dismissed because Plaintiff has failed to allege the basic elements of those two torts.

In order to state a claim for breach of fiduciary duty, a plaintiff must first show that a fiduciary duty exists between him and the defendant.  See, e.g., Radin v. Albert Einstein College of Medicine of Yeshiva, 04 CV 704, 2005 WL 1214281 (S.D.N.Y. May 20, 2005).  Plaintiff has failed to allege any such relationship in his complaint[6], and, as a result, this claim must be dismissed.

In order to state a claim for unjust enrichment, a plaintiff must show that "the defendant was enriched, that such enrichment was at plaintiff's expense, and that the circumstances were such that in equity and good conscience the defendant should return the money or property to plaintiff."  Steinmetz v. Toyota Motor Credit Corp., 963 F. Supp. 1294, 1307 (E.D.N.Y.1997) (citations and internal quotations omitted).  In this case, Plaintiff fails to allege that he conferred any

---

[5] Defendant Marworth argued in its motion to dismiss that Plaintiff failed to state a claim under Pennsylvania law.  However, the Court finds that New York law applies.

[6] Plaintiff has failed to allege that the New York City Police Department members of the Counseling Service Unit were fiduciaries.  Plaintiff has also failed to allege that Defendant LIRC was a fidcuciary.

benefit upon Defendant Treatment Centers.  Accordingly, Plaintiff has failed to allege that Defendant Treatment Centers have been enriched at his expense. Therefore, Plaintiff's claim for unjust enrichment must be dismissed.

### H. Plaintiff's Claims Under N.Y.C. Administrative Code § 14-115

New York City Administrative Code § 14-115 broadly empowers the Police Commissioner to discipline members of the force for a wide range of infractions, including "any criminal offense, or neglect of duty, violation of rules, or neglect or disobedience of orders, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct or conduct unbecoming an officer, or any breach of discipline."  Admin. Code of City of N.Y. § 14-115.  The Commissioner is authorized to discipline officers "by reprimand, forfeiting and withholding pay for a specified time, suspension, without pay during such suspension, or by dismissal from the force."  Id.  To protect officers' rights and prevent abuse, Administrative Code § 14-116 ("Limitations of suits") authorizes an article 78 proceeding "to procure the restoration or reinstatement to the force or department of any member or officer thereof, if such proceeding be instituted within four months after the decision or order sought to be reviewed." Admin. Code of City of N.Y. § 14-116 [b].

Under New York State law, these provisions have been interpreted as "leav[ing] the disciplining of police officers, including the right to determine guilt

or innocence of breach of disciplinary rules and the penalty to be imposed upon conviction, to the discretion of the Police Commissioner, subject, of course, to review by the courts pursuant to CPLR article 78." Montella v. Bratton, 93 N.Y.2d 424, 429-30 (1999) (quoting Matter of City of New York v MacDonald, 201 A.D.2d 258, 259 (1st Dept. 1994)). Accordingly, any claim Plaintiff brings under New York City Administrative Code § 14-115 must be dismissed with prejudice.

## CONCLUSION

Plaintiff's RICO claims are DISMISSED as to all Defendants without prejudice. Plaintiff is granted leave to amend his complaint within 30 days of this Order.

Plaintiff's constitutional claims against Defendant Treatment Centers are dismissed without prejudice. Plaintiff is granted leave to amend his complaint within 30 days of this Order.

To the extent that Plaintiff's constitutional claims against City Defendants are based upon infringements of his right to free speech, privacy, false imprisonment, and due process, these claims are DISMISSED with prejudice. The remaining grounds for Plaintiff's constitutional claims are DISMISSED without prejudice and Plaintiff is granted leave to amend his complaint within 30 days of this Order.

Plaintiff's claims under § 1985(3) are DISMISSED as to all Defendants without prejudice and Plaintiff is granted leave to amend his complaint within 30 days of this Order.

Plaintiff's state law claims as to City Defendants are DISMISSED with prejudice. Plaintiff's state law claims as to Defendant Treatment Centers are DISMISSED without prejudice and Plaintiff is granted leave to amend his complaint within 30 days of this Order. Plaintiff's claims based on the New York City Administrative Code are DISMISSED with prejudice.


SO ORDERED.

Dated: March 30, 2007                                   _____
      Brooklyn, New York                                   Senior U.S.D.J.